# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

EDIBLE ARRANGEMENTS, LLC,

     Plaintiff,

v.

CHEIKH MBOUP,
E.A. INTERNATIONAL LLC, and
XYZ CORPORATIONS,

     Defendants.

CIVIL ACTION FILE

NO. 1:23-CV-01158-TWT

## FIRST AMENDED COMPLAINT

Defendant Cheikh Mboup, a former President and Chief Operating Officer of Edible Arrangements, LLC, committed fraud and theft and violated his employment contract and multiple other duties owed to Plaintiff Edible Arrangements, LLC ("Edible"). Mboup stole payments from Edible vendors that were supposed to go to Edible, many of which were in the form of a paper check, then deposited them into a bank account in the name of E.A. International LLC ("EAI"), an entity he controls. Mboup had previously worked for Edible from February 2015 to August 2018, then left to form his own business venture, then came back in June of 2019 as Edible's Chief Operating Officer.

Almost from the moment he returned to Edible, he abused his position as COO in order to steal checks that were made out to Edible, depositing them into a

bank account in EAI's name. EAI is an entity that Mboup created, that he exclusively controlled, and that he intentionally named to be confusingly similar to Edible's corporate name. Mboup took advantage of this confusion and deposited checks made out to Edible Arrangements into Defendant EAI's account. Mboup testified in his deposition that the initials "EA" in "E.A. International" actually stood for "Engaged Advertising," which is not a credible explanation given that he, or someone acting at his direction, deposited over 170 checks into EAI's bank account, most of which were made out to "Edible Arrangements International" or some variant that specifically mentioned Edible. Other checks had completely different payee names on the checks, such as "Berry Direct," which is a separate and unrelated entity owned by Edible.

In addition, Mboup also directed large wire transfer payments that were intended to go to Edible from another vendor, Active Media Services, Inc. ("Active"), into the same EAI account. Without any authority to do so, he provided wire instructions to Active on Edible letterhead that were for the EAI bank account he personally controlled. He then withdrew the funds from the account and converted them for his own use.

The Defendants' purpose and intent are clear from the evidence – Mboup worked his way into a position of trust so that he could steal incoming payments for himself, to the tune of at least $3.9 million.

To date, Mboup has not taken any responsibility for his actions or made any attempt to repay Edible. Edible is continuing to learn of the extent of Mboup's wrongdoing as it conducts discovery in this case.

## THE PARTIES

1.      Plaintiff Edible Arrangements, LLC is a Delaware limited liability company. As an LLC, Edible Arrangements, LLC takes on the citizenship of its members. Its sole member is Edible Brands, LLC, a single-member limited liability company. Edible Brands, LLC's sole member is TKF Holdings, Inc., a corporation incorporated in Connecticut with its principal place of business at 980 Hammond Drive, Atlanta, Georgia 30328, in Fulton County, Georgia. Hereinafter, "Edible" refers to "Edible Arrangements, LLC" and other currently and legitimately affiliated Edible entities, which does not include "E.A. International LLC," "E.A. International LLC," "Edible Arrangements International, Inc.," "E.A. International," or "EAI."

2.      Defendant Cheikh Mboup is an individual who, upon information and belief, resides at 376 Pine Haven Dr., St. Johns, Florida 32259, and may be served at that address or, in the alternative, at 421 West Church Street, Unit 213, Jacksonville, Florida 32202.

3.      Defendant EAI is a Delaware limited liability company with a principal office address at 704 North King Street Suite 500, P.O. Box 1031,

Wilmington, Delaware 19899. Upon information and belief, EAI's sole member is Cheikh Mboup, a citizen of Florida. EAI may be served through its registered agent, Business Success Solutions Inc., at 704 North King Street Suite 500, P.O Box 1031, Wilmington, Delaware 19899.

4. Defendant XYZ Corporations #1–4 are additional companies involved in or taking part in the tortious conduct giving rise to this lawsuit but unknown at this time.

## **JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000.

6. Edible Arrangements, LLC is a citizen of Connecticut and Georgia within the meaning and intent of 28 U.S.C. § 1332.

7. Defendants Cheikh Mboup and EAI (the "Mboup Defendants") are citizens of Florida within the meaning and intent of 28 U.S.C. § 1332.

8. Accordingly, the parties are completely diverse for purposes of this Court's jurisdiction.

9. The Court has personal jurisdiction over all of the Defendants because they regularly conducted business in Georgia, entered contracts in Georgia, and caused tortious injury by an act or omission in the State of Georgia.

- 4 -

10.     This Court is a proper venue pursuant to <u>28 U.S.C. § 1391(b)(2)</u> because all of the Defendants are subject to personal jurisdiction in this judicial district, and a substantial part of the events or omissions giving rise to Edible's claims occurred in this judicial district.

11.     In addition, this Court is a proper venue pursuant to <u>28 U.S.C. § 1331</u> because this is a civil action arising under the laws of the United States.

## FACTUAL ALLEGATIONS

12.     Edible Arrangements, LLC is a franchising business with approximately 800 to 1,000 stores that specialize in sculpted fruit floral arrangements, chocolate-covered fruit gifts, and general gifting products.

13.     Mboup was initially employed by Edible from February 2015 to August 2018, with his last title during that span being the Vice President of Operations, Construction and Real Estate.

14.     Mboup left Edible in August 2018 to pursue other business interests.

15.     In June of 2019, Mboup rejoined Edible as its Chief Operating Officer.

16.     From June 2019 to September 2022, Mboup served as Edible Arrangements, LLC's President and Chief Operating Officer at Edible's corporate headquarters, located at 980 Hammond Drive, 10th Floor, Atlanta, Georgia 30328.

17.     As President and COO, Mboup had a position of trust and owed fiduciary duties to Edible Arrangements, LLC.

18.     Mboup has never had any arrangement with Edible under which he acts as a broker between Edible and Edible's vendors.

### A.     Mboup Sets Up EAI as a Fraudulent Enterprise and Opens the BBVA/PNC Account to Further the Fraudulent Scheme.

19.     In December of 2019, approximately five months after he began his stint as Edible's COO, Mboup caused EAI to be formed as a limited liability company in Delaware.

20.     EAI has no affiliation with Edible.

21.     Mboup selected the name "E.A. International LLC" for the purpose of creating the false and misleading impression that it was related to Edible or legitimately affiliated with Edible.

22.     Mboup did not form EAI as part of his employment duties with Edible, or with Edible's consent.

23.     Mboup knew that he did not have Edible's consent to form or operate EAI.

24.     Mboup testified in a 30(b)(6) deposition of E.A. International that the "E.A." in "E.A. International" stood for "Engaged Advertising," not Edible Arrangements.

- 6 -

25.     Mboup hid the existence of EAI from Edible's executive officers, its legal team, and other corporate decision-makers.

26.     Tariq Farid, founder and Chief Executive Officer of Edible Arrangements, LLC, was not aware of EAI's existence until Mboup's scheme was uncovered in February 2023.

27.     In December of 2019 Mboup opened a bank account at BBVA in EAI's name, with an account number ending -4602, into which he began to deposit paper checks that had been made payable to Edible or its affiliates.

28.     After BBVA merged with PNC Bank, PNC Bank assigned a new account number to EAI's account, with the last four digits -1605.  These two account numbers were effectively the same account, so for ease of reference, that account is referenced here as the "BBVA/PNC Account."

29.     Edible did not, at any time relevant to the claims and defenses in this case, have an account with either BBVA or PNC Bank.

30.     Upon information and belief, Mboup chose to open the account at BBVA because Edible did not bank there, in an attempt to prevent his scheme from being discovered.

31.     Mboup concealed the existence of the BBVA/PNC Account from Edible.

32.     Mboup knew that he was without Edible's authority to open the BBVA/PNC Account in order to deposit payments directed to Edible and its affiliates, and that he had acted outside of his authority in doing so.

**B.     Mboup Causes Checks Payable to Edible and Its Affiliates to be Deposited in BBVA/PNC Account.**

33.     At all times, Mboup was in a position of trust as the COO of Edible, and he abused his position to intercept the paper vendor checks that came to Edible, then deposit them into the BBVA/PNC Account.

34.     Prior to Mboup rejoining Edible as its COO, Edible received most vendor payments by wire transfer.  However, soon after Mboup rejoined the company, he directed his staff to change the process for receiving rebates, insisting that all rebates be paid by paper check, to be delivered directly to Mboup. Subsequently, Mboup put his executive assistant, Kareema Knighten, in charge of receiving the paper checks for him.

35.     Knighten was Mboup's executive assistant from 2020 through 2022.

36.     Knighten assisted Mboup in intercepting vendor payments and directing them to EAI's BBVA/PNC Account.

37.     One of the Edible vendors whose checks were deposited into the BBVA/PNC Account was Flowers, Inc. d/b/a burton+BURTON (hereinafter, "Burton & Burton").

38.     Burton & Burton was Edible's balloon supplier.

39.     Edible's contract with Burton & Burton paid rebate payments every month, in the amount of 5% of all sales of Burton & Burton products by Edible franchise locations.

40.     Because Mboup was the Chief Operating Officer of Edible, he oversaw the Burton & Burton relationship.

41.     Prior to August 2020, rebate checks paid by Burton & Burton went to Edible's Director of Operational Compliance.

42.     However, on August 4, 2020, Ms. Knighten wrote to a representative of Burton & Burton, Elaine Chandler, and directed her to send payment via check to her attention at Edible's corporate office.

43.     The next day, August 5, 2020, Burton & Burton prepared a check to "Edible Arrangements Franchise, ATTN: Kareema Knighten" for $6,413.31.

44.     Instead of depositing the payment into an Edible bank account, the payment was deposited into the BBVA/PNC Account of EAI which was controlled by Mboup.

45.     Knighten continued to assist with intercepting the vendor checks for Mboup and facilitating their deposit into the BBVA/PNC Account through at least July of 2022.

46.     Almost all of the vendors' paper checks were made out to "Edible Arrangements," "Edible Arrangements, LLC," "Edible Arrangements

- 9 -

International, Inc.," or "Edible Arrangements Franchise" – not "E.A. International LLC."

47.     Two vendor checks totaling $46,332.50 were deposited into the BBVA/PNC Account despite being made out to "Berry Direct," an entity that never employed Mboup or had any business relationship with the Mboup Defendants.

48.     Only one check during that period, a check for $6,000 on March 4, 2020, was actually made out to "EAI."  The rest of the checks referenced either "Edible" or "Berry Direct."

49.     In January 2021, Edible's supply chain department initiated an internal audit of its receipt of vendor rebates.  A manager in that department had noticed that rebate payments that should have been coming to Edible had stopped in July 2020.

50.     The Edible supply chain manager emailed the Edible personnel in charge of tracking the rebates on January 13, 2021, copying Ms. Knighten, proposing to follow up on the rebate payments.

51.     Burton & Burton responded the next day, January 14, 2021, stating that the payments had been made from July through December, and that the checks had all been sent to Ms. Knighten's attention.

52.     On approximately the same date, Mboup  called the supply chain manager and told her that the situation had been "handled," and specifically instructed her not to follow up with Burton & Burton about the rebate payments.

53.     Given Mboup's high-ranking position with the company as the COO, the supply chain manager deferred to Mboup.  She immediately sent an email back to Burton & Burton stating, "Please disregard, this was a mix-up on our end."

54.     The supply chain manager had sent similar emails to a number of other vendors who owed rebates to Edible and who had inexplicably stopped (it appeared to Edible) paying the rebates.  Pursuant to Mboup's explicit instruction to do so, she wrote back to them with a similar retraction to the one sent to Burton & Burton telling them to disregard the request for information about the payments.

55.     On July 6, 2022, Burton & Burton sent a check to Edible's offices to the attention of Knighten in the amount of $4,144.84, made out to "Edible Arrangements Franchise."  A copy of the check is attached hereto as **Exhibit 15**.

56.     That check was deposited into EAI's BBVA/PNC Account on August 1, 2022.

57.     From August of 2020 through August of 2022, Burton & Burton sent all of its rebate checks to the attention of Knighten.  This is despite the fact that Knighten left her employment at Edible on April 2, 2021 when her position was eliminated.

- 11 -

58.     After Knighten left Edible, the Burton & Burton checks continued to be sent to Edible at Knighten's attention, and for the next fifteen months, only two of the fourteen checks sent by Burton & Burton were deposited into an Edible account.

59.     Ultimately, out of the $215,387.75 in rebate payment checks sent by Burton & Burton to Edible between January 2020 and November 2022, at least $138,959.89 was deposited into EAI's BBVA/PNC Account.

60.     Upon information and belief, Mboup deliberately took most, but not all, of Edible's vendor rebate payments for himself, depositing them into an account controlled by one or both of the Mboup Defendants, so that it would still appear that the rebates were coming in as required by the vendor agreements.

61.     Mboup did nothing to "earn" these vendor rebates for himself, nor did he have permission to deposit them into his EAI account.

62.     In total, between January 27, 2020 and August 1, 2022, Mboup made fifty-four (54) deposits of over 170 Edible rebate checks in to the BBVA/PNC Account, totaling at least $1,417,647.60.

63.     The Mboup Defendants appropriated these vendor payments to themselves.  The funds were never paid to Edible.

**C.     Defendants' Scheme to Steal Active Media Up-Front Payments and Rebates.**

64.     On November 3, 2020, Mboup negotiated and signed a media-purchasing contract with Active Media, purportedly on behalf of Edible. A copy of the contract is attached as **Exhibit 1**.   Pursuant to Local Rule 15.1, Edible incorporates by reference the copy of the November 2020 contract that was attached as **Exhibit 1** to the Original Complaint.  [*See* Doc. 2-1, filed under seal.]

65.     Mboup used this to divert funds to himself and EAI by directing them to the BBVA/PNC Account.

66.     The contract refers to "Edible Arrangements International, Inc." as "Edible Arrangements" and falsely represents that "Edible Arrangements International, Inc." had offices at Edible's corporate headquarters.

67.     "Edible Arrangements International, Inc." does not currently exist and is not affiliated with or in use by Edible. Edible Arrangements, LLC's corporate name from March 2006 to March 2012 was "Edible Arrangements International, Inc.," but "Edible Arrangements International, Inc." is no longer used and is no longer an active entity. For that same reason, "Edible Arrangements International, Inc." does not have offices at Edible's corporate headquarters.

68.     Mboup signed the contract purportedly as President and/or Chief Operating Officer of "Edible Arrangements International, Inc." Ex. 1 at 7.

- 13 -

69.     Mboup knew that he did not have authority to sign a contract on behalf of "Edible Arrangements International, Inc." and exceeded his authority as the COO of Edible Arrangements, LLC by doing so.

70.     Pursuant to the November 2020 contract, Active Media was to make an upfront payment to "Edible Arrangements International, Inc." in consideration for Edible's commitment to buy millions of dollars of media through Active Media.

71.     Active Media also agreed to make certain reconciliation payments to Edible in the event that Edible's media purchases exceeded its commitment.

72.     Mboup, on behalf of "Edible Arrangements International, Inc.," entered into at least six similar contracts with Active Media on the following dates: July 9, 2021, October 1, 2021, October 7, 2021, December 17, 2021, March 28, 2022, and May 18, 2022.  Pursuant to Local Rule 15.1, Edible incorporates by reference the copies of those contracts that were attached as **Exhibits 2-7** to the Original Complaint.  [*See* Doc. 2-2 through 2-7, filed under seal.]

73.     In total, Active Media agreed to pay at least $2,500,000 in upfront and reconciliation payments to Edible in consideration for Edible's commitment to purchase nearly $20,000,000 of media.

74.     Edible did, in fact, pay $13,959,996 to Active for its services.

75.     To divert the upfront and reconciliation payments due to Edible, Mboup instructed Active Media to wire money to EAI's BBVA/PNC Account.

76.     On November 12, 2020, August 23, 2021, November 10, 2021, November 22, 2021, and May 19, 2022, Mboup sent wire instructions to Rick Forshay of Active Media from his edible.com email address using an email signature block that identified him as "President" and "COO" of "Edible Arrangements, LLC." Pursuant to Local Rule 15.1, Edible incorporates by reference the copies of those wire instructions that were attached as **Exhibits 8-13** to the Original Complaint.  [*See* Doc. 1-13; *see also* Docs 2-8 through 2-13, filed under seal.]

77.     Edible had no control over the accounts or the funds within the BBVA/PNC Account.

78.     The upfront and reconciliation payments were intended for the benefit of Edible, not Mboup. For example, Mr. Forshay referenced upfront and reconciliation payments as "cash payment to Edible" on July 9, 2021 (Ex. 9 at 2), and "payment to Edible" on September 13, 2021 and November 10, 2021 (Ex. 10 at 1–2).

79.     Forshay asked Mboup for "Edible's ACH instructions" on August 23, 2021 (Ex. 9 at 1) and stated "[w]e will pay Edible" on October 13, 2021 (Ex. 10 at 2).

80.     However, when Active specifically requested wire instructions for an Edible account, Mboup provided wire instructions for the BBVA/PNC Account that only Mboup controlled.

81.     Specifically, on November 22, 2021, Forshay asked Mboup for "your banking details on Edible letterhead" to make one of the payments. Ex. 11 at 1.

82.     Mboup responded to Mr. Forshay on Edible letterhead that same day with wire instructions for the BBVA/PNC Account. Mboup sent this response from his edible.com email address, which included a signature block identifying him as "President - COO" of "Edible Arrangements, LLC." Ex. 11.

83.     Edible did not authorize Mboup, and Mboup knew he did not have Edible's authority, to do the following: (a) form EAI or hold out EAI as affiliated with Edible (b) open accounts that only he controlled for purposes of receiving payments intended for Edible have upfront and reconciliation payments sent to such accounts; (d) receive the Active upfront and reconciliation payments through EAI; or (e) use Edible's letterhead to send wire instructions for EAI.

84.     Mboup knowingly acted outside of the scope of his authority with Edible Arrangements, LLC by, among other things: (a) signing contracts with Active Media without review or approval from Edible's legal department; (b) directing Edible employees to wire money to Active Media to purchase

advertising; and (c) sending wire instructions for an entity unaffiliated with Edible, including at least once on Edible letterhead.

85.    Mboup purported to impose payment obligations on Edible without remitting the benefit of the upfront and reconciliation payments to Edible.

86.    Mboup appropriated the payments from Active Media for his own personal use.

87.    The Active contracts make clear that the upfront and reconciliation payments were intended for Edible's benefit, as the party that was obligated to purchase millions of dollars of media with Active Media.  Thus, these upfront and reconciliation payments should have been received by Edible.

88.    In total, Mboup repeated this scheme at least seven times. Under this scheme, the Mboup Defendants received at least $2,500,000 in upfront and reconciliation payments, and Edible was deceived into paying Active Media millions of dollars in media buys.

**D.    Mboup's Scheme is Discovered.**

89.    Mboup left his employment with Edible in September of 2022.

90.    Just days after leaving Edible, on September 30, 2022, Mboup filed a Petition for Relief Under the Stalking Statute against Ms. Knighten in the Superior Court of Gwinnett County, Georgia.  The case was styled *Cheikh Mboup v. Kareema Knighten*, Civil Action File Number 22-FO2298-0.

91. The Petition, which was signed by Mboup, alleges that Mboup was a victim of "Stalking or Aggravated Stalking as defined in O.C.G.A. § 16-5-90 or § 16-5-91."

92. The Petition alleges that there had been more than 15 stalking incidents, and that the stalking had been happening for more than six months.

93. The Petition alleges, in what appears to be Mboup's handwriting:

> "[Knighten] continues to text, **call me demanding money or else 'get me in trouble"[.]** After blocking her, she decided to contact friends, coworkers, various acquaintances of mine demanding that I contact her. After numerous attempts to halt her from further contacts, I'm leaning on the court to help me with refraining [sic] Respondent from further threats & further contacts directly and indirectly."

94. Upon information and belief, the "trouble" that Knighten was threatening was that she would inform Edible and/or law enforcement of what she knew regarding his scheme to steal rebates and other payments from Edible.

95. In or around December 2022 through January 2023, Active Media began contacting other Edible employees regarding media spend for 2023.

96. By February 2023, Edible began to uncover the fraudulent nature of Defendants' conduct.

97. On or about February 23, 2023, Active Media confirmed that it paid at least $2,500,000, allegedly to Edible, pursuant to the contracts.

98.     After discovering this scheme by Mboup, Edible investigated its accounting records regarding other vendors who made payments – or should have been making payments – and discovered that Mboup blatantly stole payments that other vendors had attempted to make to Edible.

99.     When Edible discovered the scheme in February 2023, Edible CEO Tariq Farid recorded telephone calls with Mboup that covered the Active arrangement.  The calls make clear that Mboup was hiding what he did for as long as he could, and also make it clear that Farid had no knowledge of the scheme at the time Defendants' were carrying it out.

100.   Subsequently, Mboup has attempted to defend his actions in concert with Active Media by claiming that they were permitted by the terms of his "employment contract" with Edible.  However, his actions in taking the Burton & Burton payments and the additional vendor payments, and appropriating them for his own use, were not even arguably permitted by the employment contract.

101.   Defendants are still investigating the extent of Mboup's scheme to intercept payments that were intended for Edible.

102.   Prior to filing suit, Edible attempted to obtain information regarding EAI through its registered agent in Delaware, but the registered agent refused to provide any information.

103. Edible also demanded copies of EAI's bank records. Mboup, EAI, and/or their agents, acting at their direction, refused to provide them.

## CLAIMS FOR RELIEF

### Count One – Breach of Contract
### (Defendant Mboup)

104. Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

105. Edible and Mboup had a binding and enforceable employment contract.

106. Mboup breached that contract and the implied covenant of good faith and fair dealing by, among other things, engaging in self-dealing and perpetrating the scheme described above at the expense of Edible.

107. Edible suffered and will continue to suffer damages as a proximate cause of Mboup's breach of contract and implied covenant of good faith and fair dealing.

### Count Two – Breach of Fiduciary Duties
### (Defendant Mboup)

108. Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

109. Throughout the period of his employment as President and COO, Mboup owed fiduciary duties to Edible Arrangements, LLC.

110.     Mboup's fiduciary duties to Edible Arrangements, LLC included, but were not limited to, the duties of good faith and fair dealing and a legal duty to act in a manner that was in the best interests of Edible Arrangements, LLC and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

111.     Mboup breached his fiduciary duties by, among other things, engaging in self-dealing and misappropriating corporate opportunities, including by perpetrating the scheme described above at the expense of Edible.

112.     In breaching his fiduciary duties, Mboup acted knowingly, recklessly, wantonly, in bad faith, and with the intent of harming Edible.

113.     Edible suffered and will continue to suffer damages as a proximate cause of Mboup's breaches of his fiduciary duties.

### Count Three – Aiding and Abetting Breach of Fiduciary Duties
### (Defendant EAI)

114.     Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

115.     Through improper action or wrongful conduct and without privilege, EAI acted to procure a breach of Mboup's fiduciary duty to Edible.

116.     With knowledge that Mboup owed Edible fiduciary duties, EAI acted intentionally and with malice and the intent to injure.

117. The wrongful and tortious conduct of EAI procured Mboup's breach of fiduciary duty.

118. The wrongful and tortious conduct of EAI proximately caused damage to Edible.

**Count Four – Theft By Taking and Theft by Deception**
**(Both Mboup Defendants)**

119. Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

120. O.C.G.A. § 51-10-6 provides that "[a]ny owner of personal property shall be authorized to bring a civil action to recover damages from any person who willfully damages the owner's personal property or who commits a theft as defined in Article 1 of Chapter 8 of Title 16 involving the owner's personal property."

121. Defendants committed theft by taking, in violation of O.C.G.A. § 16-8-2. That provision states that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." O.C.G.A. § 16-8-2.

122. Defendants unlawfully took and otherwise appropriated Edible's property by diverting payments that should have gone to Edible.

123. Defendants intended to, and did in fact, deprive Edible of property.

124.    Defendants also committed theft by deception, in violation of <u>O.C.G.A.</u> <u>§ 16-8-3</u>. That provision states that "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property" and that "[a] person deceives if he intentionally: (1) [c]reates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; (2) [f]ails to correct a false impression of an existing fact or past event which he has previously created or confirmed; [or] (3) [p]revents another from acquiring information pertinent to the disposition of the property involved." <u>O.C.G.A. § 16-8-3</u>.

125.    Defendants obtained funds by deceitful means with the intent to deprive Edible of the funds. Specifically, Defendants gave the false impression that the Active upfront payments and the vendor payments would be paid to Edible when, in fact, they knew those payments would be, and were in fact, made to EAI, a corporate entity that is not affiliated with Edible, and in the sole control of Mboup.

126.    Defendants continue to deprive Edible of its property because the funds taken by the Mboup Defendants are in their possession, custody, or control.

## Count Five – Money Had and Received
### (Both Mboup Defendants)

127.   Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

128.   Defendants wrongfully received money pursuant the contracts, and they wrongfully retained money through the contract payments, including money paid by Active Media, Burton & Burton, and other vendors that was intended to be paid to Edible.

129.   Defendants' conduct proximately caused Edible to suffer damages.

130.   In equity and good conscience, Defendants should not be permitted to retain this money, and it must be returned to Edible.

## Count Six – Fraud & Fraudulent Concealment
### (Both Mboup Defendants)

131.   Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

132.   Defendants concealed from and/or failed to disclose to Edible the existence of Defendant EAI; the EAI accounts that were created to receive payments that were intended for Edible; the terms of the Active Media contracts; the upfront and reconciliation payments received from Active Media; and the vendor payments that Edible received by paper check that were deposited into the BBVA/PNC Account.

133. All of the above were material omissions.

134. Defendants acted with scienter.

135. Defendants intended to induce Edible to act or refrain from acting.

136. Edible justifiably relied on Defendants' material misstatements and omissions, which Defendants knew, or had reason to know, that Edible would justifiably rely upon to its detriment.

137. Edible's justifiable reliance led to Defendants creating and perpetrating a scheme by which they diverted at least $3,900,000 worth of payments that were intended to be paid to Edible into the BBVA/PNC Account.

138. Edible could not have discovered the Defendants' wrongdoing in the exercise of due diligence.

139. As a direct and proximate consequence of the Defendants' conduct, Edible has been injured in its business, causing Edible to suffer damages in an amount to be proven at the time of trial.

**Count Seven – Civil Conspiracy**
**(Both Mboup Defendants)**

140. Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

141. Defendants, acting in concert with one or more of the other Defendants, each committed at least one of the torts alleged herein, including breach of fiduciary duty, civil theft, and fraud, all in furtherance of a scheme to

defraud Edible, wrongfully receive Edible's property, and deprive Edible of other benefits to which it is entitled.

142.  Edible has suffered and will continue to suffer damages as a proximate cause of Defendants' actions.

**Count Eight – Attorney's Fees and Expenses of Litigation**
**(All Defendants)**

143.  Edible incorporates and realleges the allegations of Paragraphs 1 through 104 as though they were restated herein.

144.  Defendants have acted in bad faith, been stubbornly litigious, and caused Edible unnecessary trouble and expense. Specifically, Defendants acted in bad faith in creating a fraudulent scheme whereby Defendants negotiated, entered into, and improperly received payments pursuant to the Active Media contracts.

145.  In addition, the Mboup Defendants acted in bad faith in creating a fraudulent scheme whereby the Mboup Defendants stole over $289,000 in payments that should have gone to Edible.

146.  Edible has incurred attorney's fees and expenses of litigation as a direct result of Defendants' bad faith and stubborn litigiousness.

## **PRAYER FOR RELIEF**

WHEREFORE, Edible respectfully requests that this Court provide all available relief and equity, including:

a. A preliminary and permanent injunction;

b. Compensatory damages in amount to be proven at trial;

c. Punitive damages pursuant to all applicable law;

d. Attorney's fees and expenses, pursuant to all applicable law, including but not limited to O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, been stubbornly litigious, and caused Edible unnecessary trouble and expense;

e. Pre-judgment and post-judgment interest pursuant to O.C.G.A. § 13-6-13 and all other applicable law; and

f. All other relief that the Court deems just and proper.

Respectfully submitted this 24th day of January, 2025.

*/s/ Jason S. Alloy*
Richard L. Robbins (GA 608030)
rrobbins@robbinsfirm.com
Jason S. Alloy (GA 013188)
jalloy@robbinsfirm.com
Matthew T. Parrish (GA 558262)
mparrish@robbinsfirm.com
Catherine C. Sullivan (GA 957620)
csullivan@robbinsfirm.com
Ryan Read (GA 471916)
rread@robbinsfirm.com

Robbins Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381

*Attorneys for Plaintiff*
*Edible Arrangements, LLC*

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

I hereby certify that on this 24th day of January, 2025, I electronically filed the within and foregoing **FIRST AMENDED COMPLAINT**, which is typed in Times New Roman 14 point in compliance with the local rule, with the Clerk of Court using the CM/ECF electronic filing system which will automatically send counsel of record e-mail notification of such filing.


*/s/ Jason S. Alloy*
Jason S. Alloy